1
LATHAM & WATKINS LLP
   Daniel M. Wall (Bar No. 102580)
2     dan.wall@lw.com
   Ashley M. Bauer (Bar No. 231626)
3     ashley.bauer@lw.com
505 Montgomery Street, Suite 2000
4 San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
5 Facsimile:  +1.415.395.8095

6 *Attorneys for Defendant Abraham S. Farag*

7 *Additional Counsel on Signature Page*

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

| | |
|---|---|
| 13 UNITED STATES OF AMERICA, | CASE NO. CR 14-00534 CRB |
| 14                    Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 15        v. | |
| 16 JOSEPH J. GIRAUDO, RAYMOND A. GRINSELL, KEVIN B. CULLINANE, JAMES F. APPENRODT, and ABRAHAM S. FARAG, | The Honorable Charles R. Breyer Courtroom 6, 17th Floor Date:    January 21, 2016 Time:    10:00 am |
| 18                    Defendants. | |

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1

## NOTICE OF MOTION AND MOTION

2       PLEASE TAKE NOTICE that on January 21, 2016 at 10:00 am, and in future hearings at

3   dates to be determined, in the courtroom of the Honorable Charles R. Breyer, Defendants

4   JOSEPH J. GIRAUDO, RAYMOND A. GRINSELL, KEVIN B. CULLINANE, JAMES F.

5   APPENRODT, and ABRAHAM S. FARAG will move the Court for an order suppressing

6   evidence obtained from unlawful searches undertaken by agents from the Federal Bureau of

7   Investigation between approximately December 2009 and September 2010, as well as all

8   evidence derived from those unlawful searches.

9       This motion is based on the Fourth Amendment to the Constitution of the United States;

10   Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*;

11   all relevant case law and statutory authority; the following memorandum of points and

12   authorities; the attached Declaration of Ashley M. Bauer; any reply memorandum; supporting

13   evidence; and any evidence taken and oral argument made at the motion hearing.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

# TABLE OF CONTENTS

Page

I.      SUMMARY OF ARGUMENT ........................................................................... 1

II.     STATEMENT OF FACTS ................................................................................. 3

III.    DISCUSSION.................................................................................................... 4

        A.      General Principles ................................................................................. 5

        B.      Courts Have Long Recognized Reasonable Expectations of
                Privacy in Locations Accessible to the Public ....................................... 6

        C.      The Government Targeted Private Communications that
                Defendants Reasonably Expected to Keep Private ................................ 8

        D.      Fourth Amendment and Title III Violations Are Routinely Found
                When Electronic Devices Capture Communications a Bystander
                Could Not Hear .................................................................................... 11

        E.      The Government's Failure to Obtain a Title III Order in This Case
                Justifies an Exclusion Order ................................................................. 12

IV.     CONCLUSION................................................................................................ 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Berger v. New York*,
  388 U.S. 41 (1967)......................................................................................................5

*Brandin v. State*,
  669 So. 2d 280 (Fla. Dist. Ct. App. 1996) .......................................................7, 10

*Dalia v. United States*,
  441 U.S. 238 (1979)....................................................................................................12

*Dorris v. Absher*,
  179 F.3d 420 (6th Cir. 1999) ...............................................................2, 7, 9, 11

*Fazaga v. FBI*,
  885 F. Supp. 2d 978 (C.D. Cal. 2012) ....................................................................7

*Federated Univ. Police Officers' Ass'n v. Regents of the Univ. of Cal.*,
  No. SACV 15-00137-JLS (RNBx), 2015 U.S. Dist. LEXIS 99147 (C.D. Cal.
  July 29, 2015)..............................................................................................................12

*Gelbard v. United States*,
  408 U.S. 41 (1972).......................................................................................................5

*Gennusa v. Canova*,
  748 F.3d 1103 (11th Cir. 2014) ...............................................................................11

*Katz v. United States*,
  389 U.S. 347 (1967)...........................................................................................1, 5, 6

*Kee v. City of Rowlett*,
  247 F.3d 206 (5th Cir. 2001) ...............................................................2, 6, 7, 11

*Kyllo v. United States*,
  533 U.S. 27 (2001)..................................................................................................3, 5

*Opal v. Cencom E 911*,
  No. 93 C 20124, 1994 WL 559040 (N.D. Ill. Oct. 5, 1994)..............................8

*People v. Lesslie*,
  939 P.2d 443 (Colo. App. 1996).....................................................................2, 7, 12

*Rakas v. Illinois*,
  439 U.S. 128 (1978)....................................................................................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

*Stinebaugh v. County of Walla Walla*,
    No. CV-07-5019, 2008 WL 4809886 (E.D. Wash. Oct. 31, 2008) ..........................................7

*United States v. Dempsey*,
    No. 89 CR 0666, 1990 WL 77978 (N.D. Ill. Mar. 13, 1990) ..................................................12

*United States v. Jackson*,
    588 F.2d 1046 (5th Cir. 1979) ...............................................................................................6

*United States v. Jones*,
    542 F.2d 661 (6th Cir. 1976) .................................................................................................5

*United States v. Kahn*,
    415 U.S. 143 (1974)...............................................................................................................13

*United States v. Kalustian*,
    529 F.2d 585 (9th Cir. 1975) ................................................................................................13

*United States v. Lyons*,
    706 F.2d 321 (D.C. Cir. 1983) ...............................................................................................6

*United States v. Mankani*,
    738 F.2d 538 (2d Cir. 1984)........................................................................................2, 11, 12

*United States v. McIntyre*,
    582 F.2d 1221 (9th Cir. 1978) ............................................................................................6, 8

*United States v. Nerber*,
    222 F.3d 597 (9th Cir. 2000) .........................................................................................5, 9, 11

*United States v. Renzi*,
    722 F. Supp. 2d 1100 (D. Ariz. 2010) ..................................................................................11

*United States v. Smith*,
    978 F.2d 171 (5th Cir. 1992) .................................................................................................7

*United States v. Taketa*,
    923 F.2d 665 (9th Cir. 1991) .................................................................................................6

*United States v. Williams*,
    15 F. Supp. 3d 821 (N.D. Ill. 2014) ..............................................................................7, 8, 10

*United States v. Ziegler*,
    474 F.3d 1184 (9th Cir. 2007) ...............................................................................................5

*Wesley v. WISN Division-Hearst Corp.*,
    806 F. Supp. 812 (E.D. Wis. 1992).........................................................................................1

*Wong Sun v. United States*,
    371 U.S. 471 (1963)................................................................................................................4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

# STATUTES

18 U.S.C. § 2510(2) ...................................................................................................6

18 U.S.C. § 2511 ........................................................................................................5

18 U.S.C. § 2515 .....................................................................................................4, 6

18 U.S.C. § 2516(1) .................................................................................................12

18 U.S.C. § 2518(1)(c) ............................................................................................13

18 U.S.C. § 2518(3)(c) ............................................................................................13

18 U.S.C. § 2518(4)(a) ............................................................................................14

18 U.S.C. § 2518(5) .......................................................................................4, 13, 14

18 U.S.C. § 2518(10)(a) ............................................................................................6

# CONSTITUTIONAL PROVISIONS

U.S. Const. amend. IV ...............................................................................................4

# OTHER AUTHORITIES

Wayne R. LaFave, Search & Seizure §2.2(f) (5th ed. 2012) ..............................11, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    SUMMARY OF ARGUMENT**

In *Katz v. United States*, 389 U.S. 347, 351-52 (1967), the seminal case on modern Fourth Amendment interpretation, the Supreme Court affirmed the right of individuals to be free from warrantless government eavesdropping in places accessible to the public.  Speaking in a public place does *not* mean that the individual has no reasonable expectation of privacy.  *Id.* (public telephone booth); *Wesley v. WISN Division-Hearst Corp.*, 806 F. Supp. 812, 814 (E.D. Wis. 1992) ("[W]e do not have to assume that as soon as we leave our homes we enter an Orwellian world of ubiquitous hidden microphones.").  A private communication in a public place qualifies as a protected "oral communication" under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* ("Title III"), and therefore may not be intercepted without judicial authorization.

Nevertheless, in this case, FBI agents planted electronic recording devices outside the 401 Marshall Street entrance to the San Mateo County courthouse—where judges, lawyers, and other citizens regularly engage in confidential and sometimes privileged communications—for the purpose of capturing private conversations that the Government hoped would prove the existence of a conspiracy.  It is extremely unlikely that the Government could have obtained Title III authorization to do this, but the Government did not seek authorization—except from itself.  Notwithstanding the fact that electronic eavesdropping would capture private, protected communications, the Government set up an unauthorized electronic dragnet outside the courthouse, and on at least 31 occasions between December 22, 2009 and September 15, 2010, captured over 200 hours of conversations.[1]  Declaration of Ashley M. Bauer in Support of Defendants' Notice of Motion and Motion to Suppress Evidence; Memorandum of Points and Authorities ("Bauer Decl."), Ex. D (Sept. 17 Disclosure); Bauer Decl., ¶ 8.  Those unlawfully

---

[1] While this motion discusses only the non-consensual recordings that were disclosed by the Government to date, it seeks to suppress all evidence related to any illegally seized recordings that the Government made during the course of this investigation.  The Government has identified some such recordings, but has declined to identify or produce others; thus, the full scope of these recordings is not presently known.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1    recorded conversations are inadmissible under the Fourth Amendment and Title III, as is all

2    evidence derived therefrom.

3         The Government has claimed in its initial statements to the Court that it had the right to

4    plant stationary listening devices "aimed at the public space in front of the courthouse where the

5    public auctions took place."  Dkt. 49 at 3.  But *Katz* and numerous subsequent cases reject any

6    such omnibus justification for electronic eavesdropping.  Even in a public place, if the

7    government uses an electronic device to capture private communications, courts find Fourth

8    Amendment and Title III violations.  *See United States v. Mankani*, 738 F.2d 538, 543 (2d Cir.

9    1984); *People v. Lesslie*, 939 P.2d 443, 448 (Colo. App. 1996) (agents may not, without a

10   warrant, use listening devices to capture conversations that they could not have heard were they

11   actually present).  Here, the Government targeted conversations that an informant and an

12   undercover agent with full access to the public place were apparently unable to overhear.  The

13   evidence will show that Defendants often took affirmative steps to create a zone of privacy for

14   their communications, such as moving away from others, standing close together, covering their

15   mouths, and speaking in low volumes.  *See Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999)

16   (employees who took steps to ensure their conversations remained private had a reasonable

17   expectation of privacy).  Society recognizes that judges, lawyers, and other citizens frequently

18   have private and privileged conversations near the courthouse, and it is reasonable to expect that

19   such conversations will not be subject to interception.  *See Kee v. City of Rowlett*, 247 F.3d 206,

20   215 n.18 (5th Cir. 2001).

21        The Government must obtain a Title III order prior to conducting the type of electronic

22   eavesdropping that occurred here.  But the Government did not seek Title III authorization, nor

23   did it conduct this surveillance campaign as Title III would have required.  On numerous

24   occasions the FBI agents did not even document what was happening at the courthouse while the

25   recording devices were active, thereby hindering subsequent appropriate judicial review.  *See*

26   Bauer Decl., Ex. S (NDRE-FBI-FISUR-000068); Bauer Decl., Ex. T (NDRE-FBI-FISUR-

27   000071).  With these papers and through the upcoming evidentiary hearings, Defendants will

28   establish a reasonable expectation of privacy.  The Government will then have to explain why

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1   there has not been a Fourth Amendment or Title III violation requiring suppression of the

2   recordings and all evidence derived therefrom.  *See Kyllo v. United States*, 533 U.S. 27, 33

3   (2001).

4   **II.      STATEMENT OF FACTS**

5            In 2009, the Government began investigating allegations of bid-rigging and fraud at

6   public real estate foreclosure auctions in San Mateo County.  Bauer Decl., Ex. E (Wynar Decl.),

7   ¶ 2.  Between September 2009 and December 2009, FBI agents interviewed cooperators,

8   reviewed documentary evidence, conducted surveillance at the San Mateo County courthouse

9   (the site of some auctions), and obtained recordings of alleged illicit agreements using an

10  informant and an undercover agent.  *Id.*  In December 2009, despite apparent success with these

11  traditional investigative techniques, FBI agents planted eavesdropping devices around the

12  vicinity of the 401 Marshall Street entrance to the San Mateo County courthouse for the purpose

13  of secretly recording private conversations.  *Id.* ¶¶ 2-3.  Agents planted these eavesdropping

14  devices in at least three covert locations: a metal sprinkler box attached to a wall near the

15  courthouse entrance, a large planter box to the right of the courthouse entrance, and vehicles

16  parked on the street in front of the courthouse entrance—all areas where citizens reasonably

17  could be expected to engage in confidential communications (and lawyers and clients reasonably

18  could be expected to have privileged conversations).  Bauer Decl., Ex. B (Sept. 3 Letter from D.

19  Ward); *see also* Bauer Decl., Ex. C (diagram).[2]

20           Agents activated the listening devices on at least 31 occasions between December 22,

21  2009 and September 15, 2010.  Bauer Decl., Ex. D.  Generally, the recording devices were

22  activated more than an hour before the auctions began, and they would run for a period of time

23  after the auctions had concluded.  Bauer Decl., ¶ 9.  Some of the devices intercepted every

24  communication that occurred in their vicinity over a period of more than five hours.  *Id.*  For

25  example, the Government recorded individuals having private conversations on their cellphones

26  in an area away from the auctions.  Bauer Decl., Ex. F (1D045.002.avi).  In one instance, the

27  ───────────────

28  [2] The listening devices in the sprinkler box and the planter box captured audio, while the devices in the vehicles captured both audio and video.  Bauer Decl., Ex. E, ¶¶ 4-6.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1   Government was able to capture an alleged co-conspirator talking on his cell phone with the

2   other party to the call partially audible through the cellphone's receiver.  Bauer Decl., Ex. G

3   (1D564.001_part1.wav ).  And the Government repeatedly hid an eavesdropping device

4   immediately adjacent to the spot where one of the bidders usually set up a chair from which he

5   conducted business and communicated with his joint venture partners.  Bauer Decl., Exs. H-M

6   (surveillance photograph and video stills).  These recordings captured far more than just the bids

7   and public pronouncements that were made during the auctions.  *See* Bauer Decl., Exs. O & P

8   (1D098.002_part2.wav & 1D098.002_part3.wav).

9        All of this occurred without any judicial authorization or oversight.  The agents did not

10   obtain a warrant or a Title III order; the only "authorization" came from the DOJ itself, namely

11   the FBI and DOJ attorneys.  Bauer Decl., Ex. A (July 2 Email from D. Ward); Bauer Decl.,

12   Ex. E, ¶ 3.  There was no minimization as contemplated by Title III.  *See* 18 U.S.C. § 2518(5).

13   Given that some of the listening devices were turned on and continuously recording

14   conversations for more than five hours, Bauer Decl., ¶ 9, the Government apparently decided that

15   it could record all conversations that occurred near the courthouse without any concern that it

16   would capture communications protected by the Fourth Amendment and Title III.

17   **III.    DISCUSSION**

18        The Government's unauthorized use of recording devices to capture private conversations

19   at the San Mateo County courthouse violated Defendants' Fourth Amendment rights to be secure

20   against unreasonable searches and seizures.  *See* U.S. Const. amend. IV.  Further, this electronic

21   eavesdropping operation violated Title III, which prohibits the interception of oral

22   communications without judicial authorization.  Defendants expect that the factual record that

23   will be developed at the evidentiary hearings will support suppression, and therefore respectfully

24   move the Court to suppress all non-consensual recordings made during the course of the

25   Government's investigation and all evidence derived therefrom.  *See Wong Sun v. United States*,

26   371 U.S. 471, 484-85 (1963); 18 U.S.C. § 2515 (Title III's exclusionary rule).

27        Defendants will meet their burden to show that their conversations as a whole were

28   protected under the Fourth Amendment and Title III.  *See* Parts B, C, and D, below as well as

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1  evidence to be offered at the hearings; *see also United States v. Ziegler*, 474 F.3d 1184, 1189

2  (9th Cir. 2007). Defendants will also establish that the Government completely evaded the

3  procedural and substantive requirements of Title III. *See* Part E, below. Under the

4  circumstances, it is hard to imagine how, consistent with the policies underlying Title III, the

5  Government could salvage any part of this unlawful surveillance campaign. The Government

6  conducted this electronic surveillance nearly six years ago, without consistently or thoroughly

7  documenting what was happening at the courthouse while the recording devices were active, and

8  amassed over 200 hours of recordings. Bauer Decl., Exs. S & T; Bauer Decl., ¶ 8. That is a

9  large quantity of unlawfully obtained evidence, and it must have tainted other evidence the

10 Government intends to rely on. If the Government now wants to claim that particular recordings

11 lacked a subjective and objectively reasonable expectation of privacy, it must do so with a degree

12 of specificity that will allow the Defendants to meaningfully respond.

13     **A.    General Principles**

14      "To invoke the protections of the Fourth Amendment, a person must show he had a

15 'legitimate expectation of privacy.'" *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000).

16 An expectation of privacy is "legitimate" if the person had a subjective expectation that his

17 communications would be private, and that expectation is one that society is prepared to

18 recognize as reasonable. *Id.*; *Kyllo*, 533 U.S. at 33.

19     The potential for electronic eavesdropping to invade privacy interests is clear. "Few

20 threats to liberty exist which are greater than that posed by the use of eavesdropping devices."

21 *Berger v. New York*, 388 U.S. 41, 63 (1967); *see also Katz*, 389 U.S. at 351. Indeed, it was in

22 response to *Berger* and *Katz* that Congress enacted Title III as a "comprehensive scheme for the

23 regulation of wiretapping and electronic surveillance." *Gelbard v. United States,* 408 U.S. 41, 46

24 (1972). Title III prohibits the unauthorized recording of oral communications, and imposes

25 criminal penalties for intentional violations of the statute. 18 U.S.C. § 2511; *United States v.*

26 *Jones*, 542 F.2d 661, 668 (6th Cir. 1976) ("[T]he purpose of [Title III] was to establish an across-

27 the-board prohibition on all unauthorized electronic surveillance[.]"). Title III also comes with

28 its own exclusionary rule, which provides that when the government intercepts a communication

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1   other than as Title III expressly authorizes, "no . . . such communication and no evidence derived

2   therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any

3   court . . . of the United States."  18 U.S.C. § 2515.  "Any aggrieved person" may move to

4   suppress a communication intercepted as a result of a Title III violation.  *Id.* § 2518(10)(a).

5          Under Title III, a protected "oral communication" is "any oral communication uttered by

6   a person exhibiting an expectation that such communication is not subject to interception under

7   circumstances justifying such expectation[.]"  18 U.S.C. § 2510(2).  Congress intended the

8   definition of "oral communication" to parallel the reasonable expectation of privacy test used in

9   the Fourth Amendment context.  *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978);

10  *see also Kee*, 247 F.3d at 211 n.8.  Thus, the Fourth Amendment and Title III analyses are

11  similar.

12         **B.     Courts Have Long Recognized Reasonable Expectations of Privacy in**

13                  **Locations Accessible to the Public**

14         *Katz* affirms the right of individuals to be free from warrantless government

15  eavesdropping in places accessible to the public.  The government captured Katz's end of a

16  telephone conversation by placing an electronic recording device on the outside of the public

17  telephone booth from which Katz placed a call.  *Katz,* 389 U.S. at 348.  The Court held that the

18  government's use of the device constituted a search: "[W]hat [a person] seeks to preserve as

19  private, *even in an area accessible to the public*, may be constitutionally protected."  *Id.* at 351

20  (emphasis added).  By occupying the booth and shutting the door behind him, Katz was "entitled

21  to assume that the words he utters into the mouthpiece will not be broadcast to the world."  *Id.* at

22  352.

23         Following *Katz*, the courts have repeatedly held that one may have a reasonable

24  expectation of privacy in communications undertaken in a public place.  *See, e.g.*, *United States*

25  *v. Taketa*, 923 F.2d 665, 673 (9th Cir. 1991) ("Privacy does not require solitude."); *United States*

26  *v. Lyons*, 706 F.2d 321, 326 (D.C. Cir. 1983) ("[B]y exposing oneself to public view, for

27  instance, one does not relinquish one's right not to be overheard."); *United States v. Jackson*, 588

28  F.2d 1046, 1052 (5th Cir. 1979) ("No matter where an individual is, whether in his home, a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1    motel room, or a public park, he is entitled to a 'reasonable' expectation of privacy."); *Fazaga v.*

2    *FBI*, 885 F. Supp. 2d 978, 985 (C.D. Cal. 2012) ("[E]ven open areas may be private places so

3    long as they are not so open to [others] or the public that no expectation of privacy is

4    reasonable.") (citations and internal quotation marks omitted).[3]

5           Whether an individual has a reasonable expectation of privacy in oral communications is

6    a highly fact-specific inquiry.  *United States v. Smith*, 978 F.2d 171, 180 (5th Cir. 1992); *United*

7    *States v. Williams*, 15 F. Supp. 3d 821, 828 (N.D. Ill. 2014).  Courts generally look to the

8    following factors, *inter alia*: "(1) the volume of the communication or conversation; (2) the

9    proximity or potential of other individuals to overhear the conversation; (3) the potential for

10   communications to be reported; (4) the affirmative actions taken by the speakers to shield their

11   privacy; (5) the need for technological enhancements to hear the communications; and (6) the

12   place or location of the oral communication as it relates to the subjective expectations of the

13   individuals who are communicating."  *Kee*, 247 F.3d at 213-15 & nn. 12-17 (finding that

14   plaintiffs failed to provide sufficient facts to defeat a motion for summary judgment on § 1983

15   claim, and collecting cases); *see also Stinebaugh v. County of Walla Walla*, No. CV-07-5019,

16   2008 WL 4809886, at *8-9 (E.D. Wash. Oct. 31, 2008) (applying the factors set forth in *Kee* and

17   denying summary judgment for defendants on plaintiffs' § 1983 claim based on recording of

18   activities in an employee break room).

19          Applying these factors, courts have consistently found that warrantless electronic

20   surveillance of public oral communications violates the Fourth Amendment and Title III.  The

21   Sixth Circuit held that four employees of a rabies control center, which consisted of one large

22   room, had a reasonable expectation of privacy in conversations about their boss because they

23   spoke only when no one else was present and stopped speaking whenever a car pulled into the

24   driveway or the telephone was being used.  *Dorris*, 179 F.3d at 425.  The Ninth Circuit held that

25   a police officer had a reasonable expectation of privacy in statements made in his office, even

26   _____

27   [3] State court decisions are to the same effect.  *See, e.g.*, *Brandin v. State*, 669 So. 2d 280, 281
     (Fla. Dist. Ct. App. 1996) ("We cannot agree with the state's assertion that conversations

28   occurring in public areas can *never* be made with an expectation of privacy.  Common
     experience teaches that the opposite may often be true."); *Lesslie*, 939 P.2d at 448.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1  though his office doors were open and a records clerk sat fifteen feet away.  *McIntyre*, 582 F.2d

2  at 1224; *see also Opal v. Cencom E 911*, No. 93 C 20124, 1994 WL 559040, at *4 (N.D. Ill. Oct.

3  5, 1994) (finding that plaintiffs plausibly alleged a reasonable expectation of privacy in a 911

4  dispatch room because plaintiffs suspended conversation when speaking on the phone or using

5  the radio and when anyone walked into the room, and the supervisor told plaintiffs they could

6  speak privately).  The Northern District of Illinois held that two arrestees had a reasonable

7  expectation of privacy in their conversation in the back of a police squadrol because they spoke

8  quietly and ceased talking when the squadrol doors were open or when an officer was present,

9  and the prisoner compartment was separate from the front cab and had no visible recording

10  devices.  *Williams*, 15 F. Supp. 3d at 827-29.

11      At a minimum, these cases establish that the Government could not presume that, just

12  because the San Mateo County foreclosure auctions were held outside in a public space, it could

13  disregard the Fourth Amendment and Title III and "authorize" *itself* to indiscriminately

14  eavesdrop on private communications.

15      **C.**    **The Government Targeted Private Communications that Defendants**

16          **Reasonably Expected to Keep Private**

17      Before commencing electronic eavesdropping, the Government witnessed private

18  communications that it thought might evidence a conspiracy.  The Government admits that FBI

19  agents planted electronic listening devices at the entrance to the San Mateo County courthouse

20  "*in locations that were chosen* after [FBI] agents had developed evidence that bidders at the

21  auctions *were reaching collusive bid-rigging agreements at those locations*, during and around

22  the time of, the foreclosure auctions."  Dkt. 49 at 3 (emphasis added).  The Government was

23  targeting communications that consensual recordings (with an informant) could not capture, and

24  which apparently an undercover agent—who, of course, had full access to this public space—

25  could not hear.

26      What the Government plainly understood, and what Defendants reasonably believed, was

27  that Defendants' conversations were private.  From Defendants' perspective, the conversations

28  were private because of the highly competitive nature of the San Mateo auctions and the fact that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

pairs or small groups of bidders (including but not limited to Defendants) often bid *together* against others in legitimate joint venture arrangements.  Bauer Decl., Ex. Q (NDRE-FBI-I-000101).[4]  To avoid inadvertent information-sharing and "piggybacking"—when someone at the auction would bid on a property simply because one of the more experienced bidders did so—Defendants privately discussed how and when to bid.  *See* Bauer Decl., Ex. R (NDRE-FBI-I-000221).  The Government claims that sometimes these communications were actually collusive, and the private subject matter was about payoffs and suppressing competition.  That is what the Government says it targeted with electronic eavesdropping.  But either way the conversations were *private*—and meant to be kept private.   After watching this process over and over for an untold number of hours, the Government surely understood that the conversations it was capturing were meant to be private.

Courts frequently look to the nature of the conduct or communication in evaluating a person's subjective expectation of privacy.  *See, e.g.*, *Dorris*, 179 F.3d at 425 ("[T]he frank nature of the employees' conversations makes it obvious that they had a subjective expectation of privacy.  After all, no reasonable employee would harshly criticize the boss if the employee thought the boss was listening.").  Courts also recognize that one may have a subjective expectation of privacy because of the supposed unlawful nature of the activity.  *Nerber*, 222 F.3d at 603 (holding that defendants had a subjective expectation of privacy in a motel room because they "ingested cocaine and brandished weapons in a way they clearly would not have done had they thought outsiders might see them").  Here, whether or not the targeted communications prove conspiracy, they were secretive.  Thus the Government had no right to presume that it could electronically eavesdrop on those communications.

The recordings themselves and the FBI 302 reports generated by the agents evidence that Defendants often huddled together or spoke to one another in low volumes so that other auction attendees would not hear them.  *See, e.g.*, Bauer Decl., Ex. N (NDRE-FBI-FISUR-000056).  While the recording devices were active, FBI agents observed Defendants and alleged co-

---

[4] The Government does not deny there was legitimate joint bidding.  Bauer Decl., ¶ 22.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

conspirators holding private conversations away from others who might overhear.  *Id.* at 57 (describing Defendant Kevin Cullinane and an alleged co-conspirator having "separated themselves from the auction crowd" to have a "brief discussion" and then "return[ing] to the crowd").  Agents also observed alleged co-conspirator Dan Rosenbledt speaking into Defendant Cullinane's ear.  *Id.*  On one occasion, the Government intercepted a conversation between Rosenbledt and Cullinane which details matters that were obviously expressed with the expectation that they would remain private—such as criticisms of business partners, opinions on attorneys with whom the speakers had had interactions during the course of business, whether a particular business partner should be allowed to continue with the group, and issues related to funding certain purchases.  Bauer Decl., Exs. O & P.  While Rosenbledt and Cullinane were engaged in this conversation, a man approached and requested directions to traffic court.  *Id.*  After providing directions, both Rosenbledt and Cullinane resumed their discussion in a lower volume, while the man's footsteps can be heard retreating from them.  *Id.*  Despite the obviously private nature of this conversation, the Government continued to record it for more than thirty-five minutes.  *Id.*[5]

It bears repeating that this particular public place was immediately outside a courthouse.  Defendants' expectation that discreet conversations outside a courthouse would remain private is surely one that society is prepared to recognize as reasonable.  Private affairs are routinely discussed as citizens, their lawyers, and even judges walk to and from court, and lawyers often take clients aside outside the courthouse for privileged conversations.  "Common experience" and "everyday expectations" teach that individuals frequently have private conversations near the courthouse despite the public's access to this location, and expect that such conversations are not subject to the type of dragnet electronic eavesdropping that took place in this case.  *See Brandin*, 669 So. 2d at 281; *Williams*, 15 F. Supp. 3d at 828; *see also Rakas v. Illinois*, 439 U.S.

---

[5] Defendants expect that cross-examination of the agents who installed and activated the recording devices will reveal significant additional evidence that Defendants intended to keep their conversations private.  But even the limited information available from the recordings themselves and the agents' selective descriptions of the auction scenes (which are available for only some of the recordings) helps demonstrate that Defendants had a reasonable expectation of privacy.

128, 143 n.12 (1978) (looking to "understandings that are recognized and permitted by society").

The likelihood that privileged conversations will take place near the courthouse makes this

expectation of privacy all the more reasonable. *See, e.g.*, *Gennusa v. Canova*, 748 F.3d 1103,

1110-13 (11th Cir. 2014) (recording of attorney-client communications in interview room of

sheriff's office violated the Fourth Amendment); *United States v. Renzi*, 722 F. Supp. 2d 1100,

1118 (D. Ariz. 2010) (intentional interception of attorney-client communications violated the

Fourth Amendment and Title III, and warranted suppression of all wiretap evidence).  Indeed, as

the Fifth Circuit recognized, it is eminently reasonable to expect that a "hushed conversation on

the courthouse steps" will remain private. *Kee*, 247 F.3d at 215 n.18.  What the Government did

here is not unlawful only because it occurred outside a courthouse, but that fact makes it all the

worse.

> ### D.     Fourth Amendment and Title III Violations Are Routinely Found When Electronic Devices Capture Communications a Bystander Could Not Hear

One of the most critical considerations in evaluating expectations of privacy in

intercepted oral communications is whether the government captured by electronic device what it

could not have heard were its agents actually present.  "[T]he Fourth Amendment protects

conversations that cannot be heard except by means of artificial enhancement." *Mankani*, 738

F.2d at 543; *see also*  Wayne R. LaFave, Search & Seizure §2.2(f) (5th ed. 2012) ("[R]esort to

[electronic] equipment to hear that which cannot be heard except by artificial means constitutes a

search within the meaning of the Fourth Amendment.").  Even in public places, individuals can

guard against the risk of being overheard by others by taking precautions such as speaking

quietly and moving away from others. *See Dorris*, 179 F.3d at 425.  "But as soon as electronic

surveillance comes into play, the risk [of being overheard] changes crucially.  There is no

security from that kind of eavesdropping, no way of mitigating the risk, and so not even a

residuum of true privacy." *Mankani*, 738 F.2d at 543 (citation omitted).

The policy underlying *Katz* and Title III is that hidden audio and video surveillance is

extraordinarily invasive, *see Nerber*, 222 F.3d at 603, 605, and therefore, when it appears that the

government has used electronic means to capture what a bystander could not hear, Fourth

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1    Amendment and Title III violations should be found.  *See United States v. Dempsey*, No. 89 CR

2    0666, 1990 WL 77978, at *4 (N.D. Ill. Mar. 13, 1990) ("[I]f the recording device used by the

3    agent amplified the volume of sound such that some or all of the defendants' statements which it

4    captured could not have been *audible* to the agent wearing the device, then unlawful

5    'enhancement,' violative of the fourth amendment and [Title III], has occurred."); *Lesslie*, 939

6    P.2d at 447-48 ("[C]landestine police surveillance by use of an electronic device is substantively

7    different from simply overhearing a conversation without contrivance or augmentation of sound.

8    . . . [A listening device] may not be used without a warrant when, as here, its value is in hearing

9    what the observed party would not allow a visible observer to overhear."); *Federated Univ.*

10   *Police Officers' Ass'n v. Regents of the Univ. of Cal.*, No. SACV 15-00137-JLS (RNBx), 2015

11   U.S. Dist. LEXIS 99147, at *5 (C.D. Cal. July 29, 2015) (finding that officers plausibly alleged a

12   reasonable expectation of privacy in the offices, hallways, and bathrooms of the UC Irvine Police

13   Department because their statements "could not have been heard by other individuals without the

14   hidden recording devices").

15       Here, there is substantial evidence that agents employed electronic listening devices

16   because they were otherwise unable to get close enough to Defendants to overhear these

17   confidential, private conversations.  *See* Bauer Decl., Ex. E, ¶¶ 2-3.  If, as seems likely, the

18   Government used electronic equipment to capture private conversations that bystanders would

19   not have been able to overhear, that violates the Fourth Amendment and Title III.  *See Mankani*,

20   738 F.2d at 543; *Lesslie*, 939 P.2d at 448; LaFave § 2.2(f).

21       **E.     The Government's Failure to Obtain a Title III Order in This Case Justifies**

22           **an Exclusion Order**

23       A core purpose of Title III is to ensure that interception of wire or oral communications

24   "occurs only when there is a genuine need for it and only to the extent that it is needed."  *Dalia*

25   *v. United States,* 441 U.S. 238, 250 (1979).  The Title III scheme thus includes various

26   procedural and substantive restrictions, such as high-level Justice Department approval, 18

27   U.S.C. § 2516(1), and a written application to a judge for an order authorizing the interception

28   that must include "a full and complete statement as to whether or not other investigative

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1   procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if

2   tried or to be too dangerous," *id.* §§ 2518(1)(c), 2518(3)(c).  Title III reflects Congressional

3   policy that electronic surveillance cannot be justified "in situations where traditional

4   investigative techniques would suffice to expose the crime."  *United States v. Kahn,* 415 U.S.

5   143, 153 n.12 (1974); *see also United States v. Kalustian*, 529 F.2d 585, 590 (9th Cir. 1975)

6   (reversing denial of motion to suppress where Title III application failed to adequately show why

7   traditional investigative techniques were not sufficient).  And even when it is appropriate,

8   electronic surveillance must be conducted pursuant to judicially approved procedures, including

9   minimization efforts.  18 U.S.C. § 2518(5).

10          Here, there is every reason to believe that the Government could not have obtained

11  Title III authorization to do what it did, in the manner that it did it.  In the first place, the

12  Government affirmatively contends that traditional investigative techniques *had exposed the*

13  *alleged crime*.  Its October 5 Status Report says:

> In 2009, FBI agents were assigned to an investigation into
> allegations of bid rigging and fraud at public real estate foreclosure
> auctions in the San Francisco Bay Area, including San Mateo
> County.  Between September and December 2009, FBI agents
> interviewed multiple cooperators, reviewed documentary evidence,
> conducted surveillance of the San Mateo County auctions, and
> recorded multiple bid-rigging agreement payoffs at the San Mateo
> County auctions using a cooperator and an undercover FBI agent.
> In December 2009, FBI agents were granted authority [by the DOJ
> only] to place stationary audio and video recording devices in front
> of the San Mateo County Courthouse in order to capture
> conversations during and around the time of public foreclosure
> auctions.  ***  Stationary audio and video recording devices were
> placed in locations that were chosen after the agents had developed
> evidence that bidders at the auctions were reaching collusive bid-
> rigging agreements at those locations, during and around the time
> of, the foreclosure auctions.

Dkt. 49 at 3.  Given that admission, it is not clear what the Government could have said to

establish that "other investigative procedures have been tried and failed."  18 U.S.C.

§§ 2518(1)(c), 2518(3)(c).  The desire to obtain more evidence is not enough to justify electronic

surveillance.  *See Kalustian*, 529 F.2d at 589 (rejecting the argument that "all gambling

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1    conspiracies are tough to crack, so the Government need show only the probability that illegal

2    gambling is afoot to justify electronic surveillance").

3          The Government also appears to have disregarded altogether the Title III requirement that

4    electronic surveillance be "conducted in such a way as to minimize the interception of

5    communications" unrelated to the crime under investigation.  18 U.S.C. § 2518(5).  To the

6    contrary, the Government appears to have tried to capture nearly everything that happened at the

7    courthouse on at least 31 occasions.   It did not specify in advance the "identity of the person[s]

8    . . . whose communications are to be intercepted," *id.* § 2518(4)(a), instead intercepting

9    communications by everyone who was outside the courthouse, including passersby discussing

10   ordinary matters.  And of course the surveillance extended for far longer than the 30 days after

11   which a Title III authorization would have to have been renewed.  *Id.* § 2518(5).

12         The methodology and results of the Government's lengthy and invasive electronic

13   surveillance campaign suggest that the Government chose not to seek judicial authorization

14   precisely because it knew it could not satisfy the requirements of Title III.  Faced with little

15   chance of obtaining a Title III order, the Government simply chose to ignore the legal

16   prerequisites to intercepting oral communications and to employ electronic listening devices

17   without any oversight.

18         Defendants and the Court will learn more about the Government's investigative

19   techniques and why Title III was bypassed at the evidentiary hearings.  But it already appears,

20   based on the discovery Defendants have received, that (1) the Government authorized itself to

21   conduct this electronic eavesdropping operation under circumstances in which Title III

22   authorization would have been denied; (2) the Government made no record of any efforts to

23   avoid capturing privileged, confidential, or otherwise private communications; (3) the

24   Government did not consistently or thoroughly document what was happening at the courthouse

25   (now nearly six years ago) while the recording devices were active; and (4) the Government still

26   thinks it can use at least some of the fruits of this illegal surveillance.  Why would the

27   Government ever bother with Title III if that argument works?  Title III is meant to make the

28   Government get judicial authorization *in the first instance*, and to conduct electronic surveillance

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1  only *when deemed by the court to be necessary* and only *under approved procedures*.

2         In this case, where at the conclusion of the evidentiary hearings Defendants will have

3  demonstrated a reasonable expectation of privacy in the intercepted communications as a whole,

4  the Government's deliberate decision to eavesdrop without Title III authorization warrants the

5  exclusion of the recordings themselves and all evidence derived therefrom.  If there are any

6  exceptions—and Defendants do not believe there can be under the law—it must be on a

7  particularized showing by the Government that a specific conversation was conducted without

8  any reasonable expectation of privacy.

9  **IV.     CONCLUSION**

10        For the foregoing reasons, Defendants respectfully request that the Court grant their

11  motion to suppress all non-consensual recordings that the Government made during the course of

12  its investigation and all evidence derived therefrom.

13

14  DATED: November 13, 2015              Respectfully submitted,

15                                        LATHAM & WATKINS LLP

16

17                                        By  /s/ Ashley M. Bauer
                                              _____
18                                            Ashley M. Bauer
                                              Attorney for Defendant
19                                            ABRAHAM S. FARAG

20                                        VINSON & ELKINS LLP
                                          525 Market Street, Suite 2750
21                                        San Francisco, CA 94105
                                          Telephone: (415) 979-6990
22                                        Fax: (415) 651-8786
                                          mjacobs@velaw.com
23

24

25                                        By  /s/ Matthew J. Jacobs
                                              _____
                                              Matthew J. Jacobs (Bar. No. 171149)
26                                            Attorney for Defendant
                                              JOSEPH J. GIRAUDO
27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB

1

2   SIDEMAN & BANCROFT LLP
    1 Embarcadero Center, 22nd Floor
3   San Francisco, CA 94111
    Telephone: (415) 392-1960
4   Fax: (415) 392-0827
    lfeuchtbaum@sideman.com
5

6
    By  /s/ Louis P. Feuchtbaum
7       Louis P. Feuchtbaum (Bar. No. 219826)
        Attorney for Defendant
8       RAYMOND A. GRINSELL

9

10  LAW OFFICES OF DORON WEINBERG
    523 Octavia Street
11  San Francisco, CA 94102
    Telephone: (415) 431-3472
12  Fax: (415) 552-2703
    doronweinberg@aol.com
13

14

15  By  /s/ Doron Weinberg
        Doron Weinberg (Bar. No. 46131)
16      Attorney for Defendant
        KEVIN B. CULLINANE
17

18  ROSEN BIEN GALVAN & GRUNFELD LLP
    50 Fremont Street, Floor 19
19  San Francisco, CA 94105
    Telephone: (415) 433-6830
20  Fax: (415) 433-7104
    jbornstein@rbgg.com
21

22
    By  /s/ Jeffrey L. Bornstein
23      Jeffrey L. Bornstein (Bar. No. 99358)
        Attorney for Defendant
24      JAMES F. APPENRODT

25

26

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CIVIL LOCAL RULE 5-1(i)(3)

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other Signatories hereto.

/s/ Ashley M. Bauer
Ashley M. Bauer
Attorney for Defendant
ABRAHAM S. FARAG

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANTS' MOTION TO
SUPPRESS EVIDENCE
CASE NO. CR 14-00534-CRB