LATHAM & WATKINS LLP
   Daniel M. Wall (Bar No. 102580)
     dan.wall@lw.com
   Ashley M. Bauer (Bar No. 231626)
     ashley.bauer@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendant Abraham S. Farag*

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>   v.<br><br>JOSEPH J. GIRAUDO, RAYMOND A. GRINSELL, KEVIN B. CULLINANE, JAMES F. APPENRODT, and ABRAHAM S. FARAG,<br><br>          Defendants. | CASE NO. CR 14-00534 CRB<br><br>**DEFENDANTS' REPLY TO UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO SUPPRESS**<br><br>The Honorable Charles R. Breyer<br>Courtroom 6, 17th Floor<br>Date:   February 11, 2016<br>Time:   10:00 am |

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

**TABLE OF CONTENTS**

Page

I. SUMMARY OF ARGUMENT .................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 3

   A. Defendants' Motion Is Not Moot, and the Court Should Reject the Government's Thinly-Veiled Attempt to Avoid Judicial Scrutiny ....................... 3

   B. As Targets of the Government's Unauthorized Surveillance Operation, Defendants Have Standing to Challenge the Stationary Recordings ................................................................................................................ 5

   C. The Government Has Failed to Refute Defendants' Showing that They Reasonably Expected Their Conversations at the Courthouse to Remain Private .......................................................................................................... 8

      1. Individuals May Have Reasonable Expectations of Privacy Outdoors and Within View of Others .......................................................... 8

      2. The Government Has Failed to Establish that It Only Captured Communications a Bystander Could Overhear ........................ 12

   D. The Government's Taint Argument Is Premature and Implausible ..................... 13

III. CONCLUSION .................................................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Alderman v. United States*,
   394 U.S. 165 (1969) ................................................................................................... 13, 14

*Cuviello v. Feld Entm't, Inc.*,
   304 F.R.D. 585 (N.D. Cal. 2015) .................................................................................. 9, 10

*Dorris v. Absher*,
   179 F.3d 420 (6th Cir. 1999) ................................................................................ 8, 10, 12

*Fazaga v. FBI*,
   885 F. Supp. 2d 978 (C.D. Cal. 2012) ................................................................................ 9

*In the Matter of John Doe Trader Number One*,
   894 F.2d 240 (7th Cir. 1990) ........................................................................................... 11

*Katz v. United States*,
   389 U.S. 347 (1967) ............................................................................................ 8, 10, 11

*Kee v. City of Rowlett*,
   247 F.3d 206 (5th Cir. 2001) ............................................................................................. 9

*United States v. Allard*,
   600 F.2d 1301 (9th Cir. 1979) ......................................................................................... 13

*United States v. Bin Laden*,
   No. S(7) 98 Cr. 1023 (LBS), 2000 U.S. Dist. LEXIS 18957 (S.D.N.Y. 2001) .................. 2, 3

*United States v. Cooper*,
   No. CR 09-00156 SI, 2014 WL 3784344 (N.D. Cal. July 31, 2014) .................................. 6

*United States v. Huss*,
   482 F.2d 38 (2d Cir. 1973) .............................................................................................. 14

*United States v. Jackson*,
   588 F.2d 1046 (5th Cir. 1979) ........................................................................................... 8

*United States v. Kahre*,
   737 F.3d 554 (9th Cir. 2013). ............................................................................................ 4

*United States v. King*,
   478 F.2d 494 (9th Cir. 1973) ............................................................................................. 6

*United States v. Mankani*,
   738 F.2d 538 (2d Cir. 1984) ........................................................................................ 8, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

*United States v. Martin*,
    618 F.3d 705 (7th Cir. 2010) ...................................................................................2, 3

*United States v. McIntyre*,
    582 F.2d 1221 (9th Cir. 1978) ......................................................................................10

*United States v. Nerber*,
    222 F.3d 597 (9th Cir. 2000) ..................................................................................10, 12

*United States v. Oliva*,
    705 F.3d 390 (9th Cir. 2012) ........................................................................... 2, 5, 6, 8

*United States v. Ortiz*,
    No. C 12-00119 SI, 2013 WL 6842537 (N.D. Cal. Dec. 27, 2013) .............................6

*United States v. Polizzi*,
    500 F.2d 856 (9th Cir. 1974) .......................................................................................14

*United States v. Scott*,
    No. 1:09-CR-98-TLS, 2011 WL 2413821 (N.D. Ill. June 10, 2011) ............................9

*United States v. Taketa*,
    923 F.2d 665 (9th Cir. 1991) .......................................................................................11

*United States v. Vilar*,
    530 F. Supp. 2d 616 (S.D.N.Y. 2008) .........................................................................14

*United States v. Williams*,
    15 F. Supp. 3d 821 (N.D. Ill. 2014) .......................................................................10, 11

*Wong Sun v. United States*,
    371 U.S. 471 (1963) .......................................................................................................3

**STATUTES**

18 U.S.C. § 2515 ......................................................................................................................3

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

## I. SUMMARY OF ARGUMENT

In its Opposition to Defendants' Motion to Suppress ("Opposition"), the Government seeks to avoid judicial review of its improper investigatory activities by conceding that it "does not intend to introduce at trial" any of the over 200 hours of unauthorized electronic audio recordings in this case. Dkt. 62 at 1. To sidestep the illegality of its actions, the Government suggests that the Court need not concern itself with hundreds of hours of unauthorized electronic recordings because they "are simply not of any evidentiary value" and did not lead to the discovery of any other evidence. *Id.* at 17-18. This suggestion is not only improbable, but is belied by the facts.

According to the Government, the audio recordings from the stationary devices lack "sufficient value to introduce at trial" because "the public and cacophonous nature of the auctions" often rendered individual conversations unintelligible. *Id.* at 1. But numerous FBI Form 302s refer to information obtained from these warrantless recordings, showing that they were intelligible and that the agents relied upon them during the course of the investigation. Certainly these recordings had value, otherwise the Government would never have gone through the trouble of setting up electronic surveillance dozens of times over a ninth-month period and collecting, cataloging, and reviewing at least some portion of the 200-plus hours of conversations. Perhaps most tellingly, although the Government now argues that the recordings are worthless, it claimed just the opposite a few months ago when it informed Defendants that it intended to introduce many of them during its case in chief.

The Government also asks the Court to believe that the evidence amassed in these recordings did not lead to, and therefore did not taint, any other evidence. *Id.* at 16-18. Once again, the Government's position is hard to believe. The Government made the recordings very early in its years-long investigation. Moreover, Title III violations are felonies; surely the Government would not have taken the legal risk of employing the stationary devices if, as the Government now claims, it had gathered all the evidence of bid-rigging and fraud it needed prior to using the devices. *Id.* at 3-5. The taint issues flowing from the Government's misconduct are complex and will need considerable attention in a subsequent hearing.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

At its core, the Government's Opposition rests on the claim that its hidden eavesdropping devices recorded more than 200 hours of conversations yet failed to produce any evidence—or leads to evidence—of conspiracy. That is hardly what one would expect a prosecutor to say, nor what the Government has been saying about these communications. It seems clear that the Government is only taking the position that the recordings have no evidentiary value and did not advance the investigation because the Fourth Amendment and Title III violations have come to light. While Defendants agree that none of the 200-plus hours of stationary recordings should be introduced at trial, that is the beginning, not the end, of the Court's inquiry here. This issue is not moot, and the Government cannot prevent the Court from scrutinizing its misconduct and addressing the question of taint simply by claiming that it will not use the stationary audio recordings at trial. *See United States v. Bin Laden*, No. S(7) 98 Cr. 1023 (LBS), 2000 U.S. Dist. LEXIS 18957, at *12-13 (S.D.N.Y. 2001); *United States v. Martin*, 618 F.3d 705, 717 (7th Cir. 2010). It is essential that the Court first evaluate whether the recordings were lawful. Upon a finding that the recordings were unlawful, the Government will have to deal with two critical facts: one, its case agents committed a crime during this investigation; and two, the illegal recordings, many of which were made at the infancy of this investigation, almost certainly tainted other evidence.

Perhaps suspecting that the Court will not accept its mootness claim, the Government also offers arguments on standing and on Defendants' reasonable expectations of privacy. Both arguments fail. Defendants have standing to challenge the recordings (and all evidence derived therefrom) because they were the targets of the Government's electronic eavesdropping program. *See United States v. Oliva*, 705 F.3d 390, 394-95 (9th Cir. 2012). And Defendants' Motion, along with the evidence Defendants expect to develop at the evidentiary hearing, establishes that they had a reasonable expectation of privacy that the Government invaded time and again. *See* Dkt. 58. The Government's unauthorized use of stationary recording devices at the courthouse violated the Fourth Amendment and Title III, and the Court should reject the Government's transparent effort to cut its losses and sweep its criminal conduct under the rug.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

1  II.     ARGUMENT

2       A.     **Defendants' Motion Is Not Moot, and the Court Should Reject the**
3              **Government's Thinly-Veiled Attempt to Avoid Judicial Scrutiny**

4       On May 22, 2015—several months before the Government disclosed its use of stationary recording devices—the Government provided Defendants with a list of the audio and video recordings that it intends to rely upon during its case in chief.  Declaration of Ashley M. Bauer in Support of Defendants' Reply to United States' Opposition to Defendants' Motion to Suppress ("Bauer Decl."), Exs. A & B.  That list includes stationary recordings from 12 of the 31 days on which FBI agents activated the devices.  Bauer Decl., Ex. B; Dkt. 59, Ex. D.  Now that Defendants have challenged the legality of those recordings, the Government suddenly claims that they have no evidentiary value, commits not to introduce them at trial, and argues that Defendants' Motion is therefore moot.  Dkt. 62 at 1, 7, 16-18.  It is not.

       The Government's about-face is an obvious attempt to avoid adverse Fourth Amendment and Title III findings and to prevent the Court from assessing taint.  But the taint issue is exactly why Defendants' Motion is not moot.  The exclusionary rule requires suppression not only of evidence seized during an unlawful search, but also of any evidence derived from that unlawful search.  *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); 18 U.S.C. § 2515 (Title III's exclusionary rule).  Once Defendants establish the illegality of the recordings, the Court must proceed to the question of taint.  *See Wong Sun*, 371 U.S. at 484-85; 18 U.S.C. § 2515.  The Government's misdirection should not be permitted to interfere with this Court's review of its unauthorized activities.  As other courts have held, the Government cannot prevent the Court from scrutinizing its misconduct and addressing the critical question of taint simply by claiming that it will not use the stationary audio recordings at trial.  *See Bin Laden*, 2000 U.S. Dist. LEXIS 18957, at *12-13 (rejecting an identical mootness claim and explaining that because the case "involves an alleged Fourth Amendment violation, *Wong Sun v. United States* applies and the fruits of the search, if it was unlawful, should be suppressed.  The Court must therefore determine whether or not the searches . . . were lawful."); *Martin*, 618 F.3d at 717 (where the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

government agreed not to use challenged recordings at trial, the district court's suppression inquiry focused on evidence derived from those recordings).

The Government cites only one case to support its claim that the Court need not rule on Defendants' Motion: *United States v. Kahre*, 737 F.3d 554 (9th Cir. 2013). Dkt. 62 at 18. But *Kahre* is inapposite because there was no taint issue there. The evidence at issue was seized at the time of the defendant's arrest—in other words, at the conclusion of the investigation, with no evidence having been gathered later that could possibly have been tainted. *Kahre*, 737 F.3d at 560. Here, the stationary recordings commenced just three months into the Government's years-long investigation. Taint is therefore very much a concern. The Court must rule on the legality of the Government's conduct in the first instance, and then proceed to the secondary taint analysis. *See infra* Part D.

The Government goes to great lengths to argue that the recordings were of "little evidentiary value," were "often substantially unintelligible, with large portions capturing background noise, dead air, or the cacophony of voices," and captured only "low quality . . . irrelevant conversations." Dkt. 62 at 16-17. This is meant to explain the Government's willingness not to use the conversations without completely undermining its core allegation: that in these conversations, among others, Defendants were conspiring to rig auctions. But the Government's position lacks all credibility. The Government previously designated stationary recordings from nearly half of the days on which the devices were used for inclusion in its case in chief. Bauer Decl., Ex. B; Dkt. 59, Ex. D. The agents planted the devices repeatedly for more than nine months, often reporting in writing on the substance of the recorded conversations. Dkt. 59, Ex. D; Bauer Decl., Ex. C & ¶ 6. That is not the behavior of trained agents and prosecutors who think the efforts are of no value. Further, it would not have been possible for the agents to describe the contents of these recordings in Form 302s if they were in fact unintelligible. The Government's attempt to moot this issue is nothing more than a desperate effort to avoid judicial review of its unlawful activities and the taint that has likely infected the evidence the Government still seeks to use at trial.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

The Court should hold the Government to its commitment not to use the stationary audio recordings at trial, but that commitment does not moot Defendants' Motion. Unless the Government is prepared to concede that its conduct violated the Fourth Amendment and Title III, the Court must address the legality of the Government's use of stationary recording devices. Even if the Government claims it is not going to use the audio recordings, the Court will need to address the question of taint. *See infra* Part D. Nothing is moot.[1]

### B. As Targets of the Government's Unauthorized Surveillance Operation, Defendants Have Standing to Challenge the Stationary Recordings

The Government argues that Defendants lack standing to challenge the stationary recordings unless they are able to "specifically identify[] those conversations they seek to suppress and demonstrat[e] how they have standing to do so." Dkt. 62 at 9. The Government essentially asks Defendants to (a) do the work of trying to figure out whose voices were recorded on a given day—a near-impossible task given the Government's failure to contemporaneously document the presence of specific individuals near the recording devices—and (b) admit in a document filed with the Court that their voices are on particular recordings. The law of the Ninth Circuit does not require that Defendants undertake either exercise.

The Ninth Circuit recently addressed the scope of Title III standing in *United States v. Oliva*, 705 F.3d at 394-95. There, the government argued that the defendant lacked standing to challenge a wiretap because he did not admit that he was a party to any intercepted communication, and the interception did not occur on his premises. *Id.* at 394. The court rejected that argument, holding that the defendant had standing because he was "one of the individuals 'against whom the interception[s] w[ere] directed.'" *Id.* at 395 (quoting 18 U.S.C. § 2510(11)).

---

[1] As a procedural matter, the hearing scheduled for February 11, 2016 should proceed as ordered, focusing on whether there was a Fourth Amendment or Title III violation. *See* Dkt. 55 at 4:19-21, 7:15-19, 14:7-10, 15:1-2, 16:12-17 (discussing the need for a suppression hearing). Defendants have subpoenaed Special Agent Wynar for the hearing but reserve the right to call additional FBI witnesses as necessary, including at a subsequent taint hearing. Should the Court find after the February 11 hearing that the Government illegally seized evidence, it would then be appropriate to determine whether there is derivative evidence that must also be suppressed.

1    Courts in this district interpret *Oliva* as holding that a defendant has standing to challenge
2    electronic surveillance as long as he was its target, even if the record is not clear that he was
3    actually overheard.  For example, in *United States v. Ortiz*, No. C 12-00119 SI, 2013 WL
4    6842537, at *3 (N.D. Cal. Dec. 27, 2013), Judge Illston held that four defendants had standing
5    because they were listed as "Target Subjects" in the wiretap applications and orders, even though
6    they were never overheard and their phones were not directly tapped.  Similarly, in *United States*
7    *v. Cooper*, No. CR 09-00156 SI, 2014 WL 3784344, at *10-11 (N.D. Cal. July 31, 2014), the
8    court held that a defendant had standing because he was named as a target subject and a target
9    interceptee in the wiretap applications and affidavits, even though he refused to admit that any of
10   his conversations were intercepted.  Notably, even the case relied on by the Government, *United*
11   *States v. King*, 478 F.2d 494, 506 (9th Cir. 1973), granted standing to someone not actually
12   overheard on the wiretap.  Instead, the defendant in *King* had standing because the Government
13   intercepted a message sent at his direction as well as a reply thereto.  *Id.*

14   Here, Defendants have standing to challenge the recordings because they were the targets
15   of the Government's electronic surveillance program.[2]  The Government admits that "[f]rom the
16   beginning of the investigation, defendants Joe Giraudo, Ray Grinsell, and Kevin Cullinane . . .
17   were identified as suspected participants in the schemes."  Dkt. 62 at 4.  An October 2009 FBI
18   summary of communications with a cooperator refers to Defendants Giraudo and Cullinane as
19   "subjects."  Dkt. 62-1, Ex. D.

20   The Government highlights Defendants' failure to cite to a recording involving
21   Defendants Farag and Appenrodt.  Dkt. 62 at 9.  But the Government itself identified them in the
22   stationary recordings at issue.  Bauer Decl., Ex. B.  Defendants expect that testimony at the
23   February 11 hearing will reveal additional evidence that each defendant was "one of the
24   individuals 'against whom the interception[s] w[ere] directed.'"  *Oliva*, 705 F.3d at 395 (quoting

---

[2] In *Oliva*, *Ortiz*, and *Cooper*, the courts could easily determine that the defendants were the targets of the electronic surveillance because there were wiretap applications and orders that named them.  Here, of course, there was no such application or order.  To the extent it is somewhat harder to determine who was the target of the Government's electronic surveillance because the Government did not apply for wiretap orders, the Government should not benefit from its disregard for Title III.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

18 U.S.C. § 2510(11)). And even if Defendants Farag and Appenrodt were not initially identified as subjects or were not overheard on as many recordings as the other defendants, the three other defendants were, so this process must go forward.[3]

The Government's standing argument is all the more untenable in the circumstances of this case. There are over 200 hours of recorded conversations, this surveillance program took place nearly six years ago, and the Government failed to consistently, thoroughly, or contemporaneously document who was overheard on the recordings or in the vicinity of the devices. *See* Dkt. 59, Exs. S & T. The Government should not have recorded any of these conversations without judicial authorization and supervision. Having brazenly ignored that requirement, it now expects *Defendants* to sort through 200 hours of recordings, try to determine which Defendants may have been overheard on specific occasions, and admit to which Defendant said what. The Government should not be allowed to ignore Title III altogether *and* shift the practical burdens of its noncompliance onto Defendants.[4]

The Government specifically directed its unauthorized electronic surveillance program at Defendants' conversations, and the Government has already said it believes that it overheard each of them in at least one stationary recording. Bauer Decl., Ex. B.[5] That is enough to confer standing on Defendants in these circumstances, particularly because, as a matter of law, the

---

[3] The Government's suggestion that Defendants Farag and Appenrodt may not have standing to challenge the admission of illegally obtained or tainted evidence might necessitate severance and separate trials. Given that the Government has not supported severance to date, its request to parse standing defendant by defendant does not make sense.

[4] The recording devices planted in the sprinkler box and the planter box captured *audio only*. Dkt. 59, Ex. E, ¶ 5. The Government's failure to document who was near the audio-only devices while they were active, *see, e.g.*, Dkt. 59, Ex. T (FBI 302 with boilerplate description of use of four recording devices over approximately three hours), makes it difficult, if not impossible, for Defendants to discern with any reasonable certainty whose voices were overheard.

[5] The Government's May 22, 2015 disclosure, which lists the audio and video files the Government intends to rely on in its case in chief along with any Defendant who supposedly "appears and participates, or is discussed" in those recordings, does not resolve the question of which Defendants were overheard in each recording. Bauer Decl., Exs. A & B. First, not all of the stationary recordings are on this list. Second, it is unclear how the Government decided which of the Defendants "appear and participate, or are discussed" in each recording. Finally, given the Government's failure to contemporaneously document what was happening while the devices were activated, Defendants have reason to believe that the list does not include all recordings in which Defendants were overheard. *See* Dkt. 59, Ex. T.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

1  Government cannot require Defendants to admit that it is their voices on particular recordings in
2  order to challenge those recordings.  *Oliva*, 705 F.3d at 395.

### C. The Government Has Failed to Refute Defendants' Showing that They Reasonably Expected Their Conversations at the Courthouse to Remain Private

The law is clear that the public's access to the location of a communication is not a blanket justification for electronic eavesdropping.  *Katz v. United States*, 389 U.S. 347, 351-52 (1967).  The Government cannot credibly argue otherwise.  Yet the Government seems to believe that the public's access to the courthouse entrance justifies the Government's decision to ignore Title III's requirements.  *See* Dkt. 62 at 1 (arguing that because the auctions "were held in an open and public area," "defendants cannot establish that they had a reasonable expectation of privacy").  The Government is incorrect.

An outdoor space is not a privacy-free zone.  *Katz*, 389 U.S. at 351-52.  Defendants have already established that they took various affirmative steps to protect their discussions at the courthouse, such as moving away from others, standing close together, covering their mouths, and speaking in low volumes.  *See Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999).  FBI agents used hidden microphones to target the private conversations that an informant and an undercover agent with access to the courthouse entrance were apparently unable to overhear.  *See United States v. Mankani*, 738 F.2d 538, 543 (2d Cir. 1984).  That easily establishes Fourth Amendment and Title III violations.

#### 1. Individuals May Have Reasonable Expectations of Privacy Outdoors and Within View of Others

The Government tries to draw an artificial line between conversations that take place indoors and conversations that take place outdoors.  *See* Dkt. 62 at 2 ("open outdoor area"), 11 ("enclosed space"), 12 n.1 ("enclosed, indoor spaces"), 14 ("conducting their activities outside"), 15 ("open space").  There is no such line in the case law.  To the contrary, the law is that "[n]o matter where an individual is, whether in his home, a motel room, *or a public park*, he is entitled to a 'reasonable' expectation of privacy."  *United States v. Jackson*, 588 F.2d 1046,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

1052 (5th Cir. 1979) (emphasis added).  "[E]ven open areas may be private places[.]" *Fazaga v. FBI*, 885 F. Supp. 2d 978, 985 (C.D. Cal. 2012).  Judge Koh, in a case brought under the California wiretap statute, recently held that there is "no authority suggesting that just because a conversation takes place on a public sidewalk, the speaker forfeits any reasonable expectation of confidentiality." *Cuviello v. Feld Entm't, Inc.*, 304 F.R.D. 585, 591 (N.D. Cal. 2015).  The plaintiff in that case stated a claim because the defendant recorded his conversation after the plaintiff approached a colleague on a public street, looked around to make sure the two were far away from others, leaned into his colleague's ear, and began speaking.  *Id.*

Even *Kee v. City of Rowlett*, the case cited by the Government for the significance of the "openness" of the location of a communication, *see* Dkt. 62 at 10, 12, acknowledges the possibility of a reasonable expectation of privacy in two outdoor spaces: the courthouse steps and a grave site.  247 F.3d 206, 215 n.18, 216-17 (5th Cir. 2001).  The court indicated that two federal judges would have a reasonable expectation of privacy in a conversation on the courthouse steps, provided they spoke quietly and stepped away from others who might overhear.  *Id.* at 215 n.18.  The court also noted that the mere "fact of visual observation does not necessarily control the reasonableness of the privacy expected for oral communications." *Id.* at 217 n.21.[6]

Yes, the real estate foreclosure auctions "were held in an open and public area." Dkt. 62 at 1.  But neither that nor the other facts the Government identifies (*e.g.*, nearby closed-circuit television cameras, parking for law enforcement) means that everything that transpired in that space was "exposed for the public to hear and see" and thus "not protected by the Fourth

---

[6] It is of no moment that in *Kee* the court ultimately concluded that the plaintiffs lacked a reasonable expectation of privacy in their conversations at a grave site.  *Kee* dealt with a motion for summary judgment.  The holding in *Kee* resulted from the plaintiffs' failure to produce *any evidence* regarding indicia of the speakers' reasonable expectations of privacy.  *Id.* at 216-17.

The Government also rests its indoor-outdoor space rule on *United States v. Scott*, No. 1:09-CR-98-TLS, 2011 WL 2413821 (N.D. Ill. June 10, 2011).  That case concerns a recording device placed in an informant's vehicle, with the informant's consent.  *Id.* at *1.  A third party drove the informant's vehicle to the defendant's house and had a conversation with the defendant in the driveway, which the recording device captured.  *Id.* at *2.  *Scott* in no way justifies what the Government did here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

Amendment or Title III." *Id.*[7] The Government has completely failed to refute Defendants' assertion that *because* the auctions occurred in a sometimes crowded, public area, they took steps to create zones of privacy for their conversations. *See* Dkt. 59, Ex. N. FBI reports of visual surveillance describe Defendants separating themselves from the auction crowd to talk privately and speaking into one another's ears. *Id.* Defendants had legitimate reasons to speak to one another privately, as they frequently pooled their resources in legitimate joint ventures, and they tried to compete against "piggybackers." Dkt. 59, Exs. Q & R. The conversations that the Government intercepted include matters obviously meant to be kept private, such as criticisms of joint venture partners and opinions on attorneys with whom the speakers had done business. Dkt. 59, Exs. O & P. And even if, as the Government claims, the conversations were conspiratorial, those could be private as well. *See United States v. Nerber*, 222 F.3d 597, 603 (9th Cir. 2000) (defendants had a subjective expectation of privacy in a hotel room where they used drugs and brandished weapons in a way they would not have if others might have seen them). Carving out a private space from an otherwise public one, as Defendants did here, is exactly what individuals have done in cases in which courts have found reasonable expectations of privacy. *See, e.g.*, *Katz*, 389 U.S. at 351-52 (stepping into a telephone booth); *Dorris*, 179 F.3d at 425 (speaking only when alone and ending conversation when a car pulled into the driveway or when the telephone was used); *United States v. McIntyre*, 582 F.2d 1221, 1224 (9th Cir. 1978) (using an office); *United States v. Williams*, 15 F. Supp. 3d 821, 827-29 (N.D. Ill. 2014) (speaking quietly and only when alone, despite proximity to police)[8]; *Cuviello*, 304 F.R.D. at 591 (ensuring no one is nearby and leaning in before speaking).

---

[7] The Government claims that it received authorization from the San Mateo County Sheriff's Office to plant the stationary devices. *Id.* at 5-6; Dkt. 62-1, ¶ 8. Aside from perhaps showing that the Government did not commit a trespass, permission from a sheriff's office has absolutely no bearing on the legality of the Government's electronic surveillance program. In fact, the Government's decision to seek approval from a sheriff's office, but not from a judge, suggests that its determination to embark on this program was a deliberate effort to record private conversations at the courthouse without first seeking judicial approval.

[8] The Government relies heavily on the auctions having taken place "adjacent to a curbside that was marked as designated for law-enforcement vehicles." Dkt. 62 at 1; *see also id.* at 3 (discussing street signs). Proximity to law enforcement—in this case, parked law enforcement

1   The Government suggests that the presence of passersby on the sidewalk and other bidders at the auctions destroys any reasonable expectation of privacy. Dkt. 62 at 10-11. But "[p]rivacy does not require solitude." *United States v. Taketa*, 923 F.2d 665, 673 (9th Cir. 1991). There is no evidence that this case is analogous to *In the Matter of John Doe Trader Number One*, 894 F.2d 240, 243 (7th Cir. 1990), where the defendant traders spoke "only a few feet" from an agent who was "clearly present," easily able to overhear the traders' conversations, and wore the recording device on his person (making the recordings consensual). Indeed, in this case the electronic surveillance was apparently an alternative to the use of informants and FBI agents posing as passersby, intended to gather more (and different) evidence than those methods had generated. Further, even if there were a number of people present during the auctions, that would not excuse the Government's use of the recording devices long before and after the auctions took place.

The Government also makes much of the fact that in an outdoor space conversations were *visible*. But, as the Government surely knows, visibility has no bearing on exclusion of the "uninvited ear," as opposed to the "intruding eye." *Katz*, 389 U.S. at 352. Indeed, the Government makes that distinction itself in a later part of its brief. Dkt. 62 at 18-19. Thus, the fact that others "regularly walk[ed] by" and that bidders "observe[d] each other," *id.* at 15, has nothing to do with Defendants' reasonable expectations of privacy in their conversations. For the same reason, the Government's repeated references to a closed-circuit television camera in the auction area—which only captured video, not audio—fall flat. *See id.* at 1, 3, 11.

The Government cannot be heard to argue that in the absence of physical enclosures, electronic eavesdropping is fair game. That is a challenge to *Katz* itself, and to numerous subsequent cases.

//

//

---

vehicles—does not prevent individuals from having a reasonable expectation of privacy. Indeed, the court in *Williams* held that a defendant had a reasonable expectation of privacy in a conversation that took place while riding in a police squadrol. 15 F. Supp. 3d at 827-29.

### 2. The Government Has Failed to Establish that It Only Captured Communications a Bystander Could Overhear

Secret audio and video surveillance is extraordinarily invasive. *Nerber*, 222 F.3d at 602, 605. When the Government employs hidden microphones, as it did here, individuals cannot guard against the risk of being overheard by taking the usual safeguards, such as moving away from others and speaking in low volumes. *See Mankani*, 738 F.2d at 543; *Dorris*, 179 F.3d at 425. For that reason, courts have long held that the Government may not capture by electronic device what a bystander could not overhear. *See Mankani*, 738 F.2d at 543. The Government therefore tries to convince the Court that Defendants' conversations "were invariably overheard" by passersby and other auction attendees. Dkt. 62 at 15. The facts in the record tell a different story.

If anyone walking by Defendants was able to overhear their conversations, why did the Government go to such lengths to surreptitiously record the conversations? Why not station an FBI agent at the courthouse entrance and have that agent report on what he or she overheard? One would expect voluminous FBI 302 reports on conversations that "were invariably overheard" by passersby, but Defendants have not seen any—and the Government did not point to any in its papers. The Government's argument that these conversations "were invariably overheard" is pure *ipse dixit*, entitled to no weight whatsoever. It even conflicts with the Government's excuse for abandoning the recordings—the idea that the recordings were unintelligible because of "background noise" and "the cacophony of voices at a crowded auction." *Id.* at 16. On its face, that indicates that relevant conversations *were difficult to hear*, even with electronic recording technology. The evidence at the hearing will show that the Government used the stationary devices precisely because its agents were unable to get close enough to overhear Defendants' private conversations. That is a violation of the Fourth Amendment and Title III.

We note the Government's contention that the recording devices "could not detect sounds below 33.0dB . . . less sensitive than the threshold for hearing by a healthy human ear." *Id.* at 14. The capabilities of the devices employed in this case are best left to expert testimony, not a

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

1  citation to the Centers for Disease Control website.  *See id.*  Further, the Government's claim that

2  it used "non-voice-enhancing equipment" is inconsequential.  *Id.*  The Government does not

3  explain what it means by "non-voice-enhancing equipment," but if it means that the devices did

4  not enhance the sounds they picked up at the time the recordings were made, that does not

5  foreclose the possibility that the recordings could be enhanced after the fact.  It is Defendants'

6  understanding—which will be explored at the hearing—that various post-recording techniques,

7  such as adjusting signal to noise ratio, could improve the audibility of the recordings, which for

8  the purposes of determining whether the Government violated Defendants' reasonable

9  expectations of privacy is enough.

10       **D.      The Government's Taint Argument Is Premature and Implausible**

11           The Government's strategy for dealing with Defendants' Motion is to concede it will not

12  use the audio recordings themselves and then assert that "the government [did not] derive any

13  evidence from the stationary recordings."  *Id.* at 16.  That is an astonishing statement for a

14  prosecutor to make; if 200 hours of recorded conversations among alleged conspirators did not

15  lead, directly or indirectly, to any evidence of conspiracy or fraud, why is this case proceeding?

16  Further, it is inconceivable that the attorneys for the Government would know exactly how the

17  FBI agents investigating the case were influenced by information they gleaned from studying the

18  recordings, from drafting and reviewing Form 302s about the recordings, and from interviewing

19  witnesses about recorded conversations.

20           Regardless, it is premature to reach the merits of the Government's taint argument (*i.e.*,

21  whether or not the Government derived any evidence from the illegal recordings).  As explained

22  in Part A, the Court must rule on the legality of the Government's use of stationary recording

23  devices first, and then address taint in a separate, subsequent inquiry.  Taint is typically

24  addressed at an *Alderman* hearing, not by broad, unsworn statements of the type the Government

25  offers here.  *Alderman v. United States*, 394 U.S. 165, 181-85 (1969) (discussing the "right to

26  cross-examine the appropriate officials in regard to the connection between those records and the

27  case made against [the defendant]"); *United States v. Allard*, 600 F.2d 1301, 1306 (9th Cir. 1979)

28  ("The legal determination that evidence was tainted must rest on specific factual findings.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

1  Because the question of taint was not fully explored below, we must remand for resolution of the
2  remaining factual questions."); *United States v. Huss*, 482 F.2d 38, 50 (2d Cir. 1973) (discussing
3  the dangers of relying on the government's "good faith" when addressing the fruits of illegal
4  electronic surveillance).

5        Defendants acknowledge that they must come forward with some "specific evidence
6  demonstrating taint." *Alderman*, 394 U.S. at 183.  And the appropriate time and place to do so is
7  the taint hearing.  *See United States v. Vilar*, 530 F. Supp. 2d 616, 641-42 (S.D.N.Y. 2008)
8  (rejecting the government's argument that a defendant must meet his initial burden before, rather
9  than during, a taint hearing); *United States v. Polizzi*, 500 F.2d 856, 910 (9th Cir. 1974) ("*At an*
10 *Alderman hearing*, the court must determine whether the prosecution used unconstitutionally
11 seized material directly or indirectly to develop the evidence it produced at trial[.]") (emphasis
12 added).  Once Defendants meet their initial burden at the taint hearing, the Government will then
13 have "the ultimate burden" of proving that its evidence against Defendants was not tainted by the
14 stationary recordings.  *Alderman*, 394 U.S. at 183.

15       The Government's taint argument essentially amounts to, "trust us; we didn't derive
16 anything from the stationary recordings."  That is implausible, to say the least.  Aside from the
17 sheer improbability of the Government's argument, the Government included stationary
18 recordings from 12 of the 31 days on which the devices were activated on the list of materials the
19 Government intends to rely on in its case in chief.  Bauer Decl., Ex. B.  It also continued
20 recording Defendants' private conversations for over nine months, which makes no sense if
21 nothing of value was being captured.  Dkt. 59, Ex. D.  The Government started making use of the
22 recording devices early in its investigation, *see id.*, and surely something gathered later must be
23 based on what was learned in the recordings.  The Government broadly claims that "[n]one of
24 the search warrant affidavits cited or relied on the content of the stationary recordings."  Dkt. 62
25 at 17; Dkt. 62-1, ¶ 14.  Even if the affidavits did not directly cite or rely on the recordings, it is
26 entirely possible that the recordings led to other evidence that *was* cited in the affidavits or that
27 might be presented at trial or was used to induce or coerce guilty pleas by others who could be
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

witnesses here.  Agent Wynar's declaration is conspicuously silent on these matters.  *See* Dkt. 62-1, ¶ 14.  The taint issues are very serious and will need considerable attention.

### III.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to suppress all non-consensual recordings that the Government made during the course of its investigation and all evidence derived therefrom.

DATED: January 5, 2016                              Respectfully submitted,


By  /s/ Ashley M. Bauer
    Daniel M. Wall (Bar No. 102580)
    Ashley M. Bauer (Bar No. 231626)
    LATHAM & WATKINS LLP
    505 Montgomery Street, Suite 2000
    San Francisco, CA 94111-6538
    Telephone: (415) 391-0600
    Fax: (415) 395-8095
    dan.wall@lw.com
    ashley.bauer@lw.com

*Attorneys for Defendant Abraham S. Farag*


By  /s/ Matthew J. Jacobs
    Matthew J. Jacobs (Bar No. 171149)
    VINSON & ELKINS LLP
    525 Market Street, Suite 2750
    San Francisco, CA 94105
    Telephone: (415) 979-6990
    Fax: (415) 651-8786
    mjacobs@velaw.com

*Attorney for Defendant Joseph J. Giraudo*

//

//

//

//

//

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB

|   |   |
|---|---|
| 1 | By /s/ Louis P. Feuchtbaum |
| 2 | Louis P. Feuchtbaum (Bar No. 219826)<br>SIDEMAN & BANCROFT LLP |

By  /s/ Louis P. Feuchtbaum
  Louis P. Feuchtbaum (Bar No. 219826)
  SIDEMAN & BANCROFT LLP
  1 Embarcadero Center, 22nd Floor
  San Francisco, CA 94111
  Telephone: (415) 392-1960
  Fax: (415) 392-0827
  lfeuchtbaum@sideman.com

  *Attorney for Defendant Raymond A. Grinsell*

By  /s/ Doron Weinberg
  Doron Weinberg (Bar No. 46131)
  LAW OFFICES OF DORON WEINBERG
  523 Octavia Street
  San Francisco, CA 94102
  Telephone: (415) 431-3472
  Fax: (415) 552-2703
  doronweinberg@aol.com

  *Attorney for Defendant Kevin B. Cullinane*

By  /s/ Jeffrey L. Bornstein
  Jeffrey L. Bornstein (Bar No. 99358)
  ROSEN BIEN GALVAN & GRUNFELD LLP
  50 Fremont Street, Floor 19
  San Francisco, CA 94105
  Telephone: (415) 433-6830
  Fax: (415) 433-7104
  jbornstein@rbgg.com

  *Attorney for Defendant James F. Appenrodt*

**CIVIL LOCAL RULE 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other Signatories hereto.

/s/ Ashley M. Bauer
Ashley M. Bauer
Attorney for Defendant Abraham S. Farag

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' REPLY TO UNITED STATES'
OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 14-00534-CRB