IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH J. GIRAUDO, RAYMOND A. GRINSELL, KEVIN B. CULLINANE, JAMES F. APPENRODT, and ABRAHAM S. FARAG,<br><br>    Defendants.<br>_____/ | No. CR 14-534 CRB<br><br>**CLARIFYING ORDER** |

While investigating Defendants, federal agents decided to bug a courthouse. They also decided that they didn't need a warrant to, yes, bug a courthouse. There can be no doubt that these decisions flouted constitutional and statutory protections alike. But in this criminal case, questions remain about who may suppress what as a result.

## I.   BACKGROUND

### A.   Legal Backdrop

Two legal regimes are in play here: one constitutional, one statutory.

#### 1.   Fourth Amendment

The government conducts a search under the Fourth Amendment when an effort to obtain information either (1) "violates a subjective expectation of privacy that society recognizes as reasonable," Kyllo v. United States, 533 U.S. 27, 33 (2001) (citing Katz v. United States, 389 U.S. 349, 361 (Harlan, J., concurring) (1967)), or (2) involves a "physical intrusion [into] a constitutionally protected area." United States v. Jones, 132 S. Ct. 945, 951 (2012) (citation omitted). When the government does either without a warrant, it usually violates the Fourth Amendment. But see, e.g., Chambers v. Maroney, 399 U.S. 42, 51 (1970) (allowing warrantless searches of cars because they are "readily movable"); Warden v. Hayden, 387 U.S. 294, 298 (1967) (allowing warrantless searches for fugitives when officers are in hot pursuit).

A defendant may suppress evidence obtained directly from an unconstitutional search, along with evidence that is "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 488 (1963).  But that may only happen if the unconstitutional search "violated the Fourth Amendment rights of [the] criminal defendant who seeks to exclude the evidence obtained during it."  Rakas v. Illinois, 439 U.S. 128, 140 (1978).  Put another way, for a defendant to invoke the Fourth Amendment's exclusionary rule, the search must have violated his own reasonable expectation of privacy or involved a physical intrusion into his own constitutionally protected area – not those of someone else.[1]  See, e.g., Lyall v. Cnty. of Los Angeles, 807 F.3d 1178, 1185-87 (9th Cir. 2015).  That being so, a defendant may not suppress evidence under the Fourth Amendment simply because he was someone "at whom a search was 'directed.'"  Rakas, 439 U.S. at 132-33.  The Supreme Court squarely rejected this "target theory" of the Fourth Amendment in 1978.  Id.

### 2. Title III

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 provides a comprehensive statutory scheme that governs the interception of wire, oral, and electronic communications.  United States v. Oliva, 705 F.3d 390, 393 (9th Cir. 2012); see 18 U.S.C. §§ 2510-22.  It establishes "special safeguards against the unique problems posed by misuse of wiretapping and electronic surveillance" over and above Fourth Amendment protections.  United States v. Calandra, 414 U.S. 338, 355 n.11 (1974).  For example, to comply with Title III the government must not only satisfy the familiar requirements of probable cause and particularity, but also demonstrate a need for electronic surveillance, conduct it in a way that minimizes invasions of privacy, and comply with a complex web of authorization requirements.  See 18 U.S.C. § 2518.

These special safeguards kick in when the government "intentionally intercepts" or "endeavors to intercept . . . any wire, oral, or electronic communication."  18 U.S.C.

---

[1] Rakas made clear that Fourth Amendment "standing" is not "distinct from the merits of a defendant's Fourth Amendment claim," and so courts need not conduct a stand-alone standing analysis when considering them.  Rakas, 439 U.S. at 428-29.  But see, e.g., Lyall v. Cnty. of Los Angeles, 807 F.3d 1178, 1185-87 (9th Cir. 2015); Order on Mot. to Suppress (dkt. 149) at 11.

2

§ 2511(1)(a). Oral communication means a communication "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."[2] 18 U.S.C. § 2510(2). And intercept means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Besides imposing criminal sanctions and civil liability on violators, Title III prohibits any "part of the contents of" unlawfully intercepted communications and "evidence derived therefrom" from being used as evidence at trial (or most any other legal proceeding). 18 U.S.C. § 2515. Any "aggrieved person . . . may move to suppress" such evidence.[3] 18 U.S.C. § 2518(10)(a). And "aggrieved person" means "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11).

### B. Procedural Posture

On August 1, 2016, the Court held that the government had "utterly failed to justify a warrantless electronic surveillance program that recorded private conversations spoke in hushed tones by," among others, "judges, attorneys, and court staff" outside the San Mateo County Courthouse. Order on Mot. to Suppress (dkt. 149) at 1. It also held that Defendants had "standing" to challenge "all recordings" made after the date that they became "targets" of the electronic surveillance program but admittedly glossed over whether this latter holding rested on the Fourth Amendment, Title III, or both. See id. at 11. Confusion ensued, so the Court offered to clarify. See Nov. 21 Hr'g Tr. (dkt. 187) at 28-29. The parties provided further briefing. See Def. Br. (dkt. 188); Gov't Resp. (dkt. 189); Reply (dkt. 190).

## II. DISCUSSION

Under the Fourth Amendment, Defendants may not suppress stationary audio recordings that did not capture their own voices. See Alderman v. United States, 394 U.S.

---

[2] Congress modeled this language on Katz's reasonable expectation of privacy test. See United States v. McIntyre, 582 F.2d 1221, 1223 (9th Cir. 1978).

[3] So, unlike under the Fourth Amendment, courts should still discuss standing under Title III. See, e.g., Oliva, 705 F.3d at 395; accord Order on Mot. to Suppress at 11.

3

165, 175-76 (1969). The same is true for any further evidentiary fruits that the recordings yielded.[4] Id. at 171-175. Doing so requires the government to have "overheard conversations of a [defendant] himself or conversations occurring on his premises."[5] Id. at 176. So Defendants are right to stress that they have standing "under Title III," Def. Br. at 1, and why the real fight here is about the statute, not the constitution.

The Court, as is in vogue, begins with the statutory text. See Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).[6] An "aggrieved person" under Title III includes not just "a party" to an intercepted communication, but also anyone "against whom the interception was directed." 18 U.S.C. § 2510(11). So, for a start, Title III must accord standing to people other than those who were parties to unlawfully intercepted communications, lest Section 2510(11)'s second clause do no work. See Williams v. Taylor, 529 U.S. 362, 404 (2000) (reminding courts to "give effect, if possible, to every clause and word of a statute"). For that reason, the Ninth Circuit has made clear that the "definition of aggrieved person is broader than any person whose . . . communication is intercepted."[7] Noel v. Hall, 568 F.3d 743, 748 n.7 (9th Cir. 2009). The question here, then, turns on whether Defendants were people "against whom the interception was directed." 18 U.S.C. § 2510(11).

Because Title III elaborates no further, the Court should look to the "ordinary meaning" of those words. See, e.g., Schindler Elevator Corp. v. U.S. ex rel. Kirk, 563 U.S. 401, 407 (2011). It is hard to imagine the phrase "against whom the interception was

---

[4] Rather than arguing for a "separate standing analysis regarding fruits," Reply at 2, the government makes this very point, Gov't Resp. at 2, which – as to the Fourth Amendment – is correct.

[5] Defendants do not (and could not) argue that the San Mateo County Courthouse was their premises. See Def. Br. at 1-3.

[6] As will become clear, the case law about standing under Title III is somewhat of a mess, providing all the more reason to start here. See United States v. Glover, 174 F. Supp. 3d 431, 443-48 (D.D.C. 2016) (discussing the mess, albeit without using that term).

[7] Likewise, Section 2510(2) cannot confine the term "aggrieved person" to just those people who possessed a reasonable expectation of privacy in the communication itself, since that would also cover only parties to the communication. Instead, that definitional provision does what one would expect: it defines what constitutes an oral communication protected by Title III. See 18 U.S.C. § 2510 ("Definitions"). So long as someone reasonably expected an intercepted communication to remain private, see id., any "aggrieved person" has standing to suppress under Title III, id. § 2518(10)(a).

4

directed" not covering "the target of the surveillance," United States v. Oliva, 705 F.3d 390, 395 (9th Cir. 2012), even if that person were not a participant in the captured conversation or the owner of the premises where it occurred.[8]  Many courts agree.  See, e.g., id.; United States v. Scurry, 821 F.3d 1, 7 (D.C. Cir. 2016); United States v. Terry, 572 F.3d 430, 431-32 & n.2 (7th Cir. 2009); United States v. Apple, 915 F.2d 899, 905 (4th Cir. 1990); United States v. Civella, 648 F.2d 1167, 1171 (8th Cir. 1981).  Accordingly, the most natural reading of the statute suggests that a person has standing under Title III if (1) "he was a party to an intercepted communication," (2) "the intercepted communications took place on his premises," or (3) "the government's efforts were directed at him," Apple, 915 F.2d at 905.  Accord Oliva, 705 F.3d at 395.

The government disagrees, citing forty-five year old dicta in Alderman.  See Gov't Br. at 2.  That case noted that "Congress or state legislatures may extend the exclusionary rule" beyond the constitutional floor but, based on a Senate Committee Report, said that Title III had not done so.  Alderman, 394 U.S. 165, 175 & n.9 (1969); see also S. Rep. 90-1097 (provision defining "aggrieved person" was "intended to reflect existing law").  Alderman, however, was a Fourth Amendment case concerning events that happened before Congress passed Title III, see id. at 167-70 & n.4, and so its musings on the statute are just that.

Nonetheless, courts – including the Ninth Circuit – have opined that a defendant may suppress evidence under Title III only if, as under the Fourth Amendment, either (1) "he was a participant in an intercepted communication," or (2) "if such conversation occurred on his premises," United States v. King, 478 F.2d 494, 506 (9th Cir. 1973).  Accord United States v. Gonzalez, Inc., 412 F.3d 1102, 1116 (9th Cir. 2005) (relying on Alderman to observe that the

---

[8] The Supreme Court, admittedly, has done its best – but only in the Fourth Amendment context. Jones v. United States held that, under the Fourth Amendment, "to qualify as a person aggrieved by an unlawful search and seizure one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed as someone else." Jones, 362 U.S. 257, 261 (1960) (emphasis added). Rakas v. Illinois read this underscored language from Jones "merely as a parenthetical equivalent of the previous phrase 'a victim of a search or seizure'" and noted that to whatever "extent it might be read more broadly, it is dictum which was impliedly repudiated in Alderman" and which the Court then "expressly" rejected in Rakas. 439 U.S. at 135. Congress modeled Section 2510(11)'s language on Jones but not Rakas, as the latter came a decade after Title III and does not discuss the statute. See S. Rep. 90-1097; Rakas, 439 U.S. at 129-50. Rakas does not control.

5

"Supreme Court has interpreted these provisions as limiting standing to challenge wiretaps to persons whose Fourth Amendment rights were violated by the interception."); United States v. Taketa, 923 F.2d 665, 676 (9th Cir. 1991); United States v. Scasino, 513 F.2d 47, 50 (5th Cir. 1975); United States v. Bynum, 513 F.2d 533, 535 (2d Cir. 1975).

The Court is not bound to read the statute that way. United States v. King held that one defendant had standing as a party to an unlawfully intercepted communication, and that the government had not waived its standing arguments as to two other defendants who conceded that they had none. King, 478 F.2d at 506. United States v. Gonzalez, Inc. held that the defendants had standing under Title III because they owned and "had substantial control" over operations of an office that law enforcement had surveilled. Gonzalez, Inc., 412 F.3d at 1116. And United States v. Taketa held that a defendant had standing to suppress video surveillance because he himself was filmed. Taketa, 923 F.2d at 676-77. These cases thus had no occasion to pass on whether a mere "target of the surveillance," Oliva, 705 F.3d at 395, has standing under Title III.[9]

But United States v. Oliva did. There the defendant refused to admit whether his voice was captured on unlawful recordings or whether they took place on his premises. Oliva, 705 F.3d at 395. The Ninth Circuit nevertheless held that the defendant had standing under Title III because his conversations were "the target of the surveillance," full stop. Id. And although officers "averred that the defendant 'was using the individual cell phones at issue,'" Gov't Br. at 2 n.1 (quoting Oliva, 805 F.3d at 395), that fact mattered because it proved that they were targeting the defendant – not because it somehow proved that he was indeed using those cell phones.[10] Oliva controls.

---

[9] Scasino and Bynum, of course, are out-of-circuit authority.

[10] A quick skim of the surrounding language delivers the knockout blow here:

"Irrespective of Oliva's refusal to admit that the voices in the conversations intercepted included his own or that any of the intercepts took place on his premises, Oliva was one of the individuals 'against whom the interception[s] w[ere] directed.' § 2510(11). The affidavits in support of the surveillance orders included investigators' statements certifying their beliefs that he was using the individual cellular phones at issue. Oliva's conversations were the target of the surveillance. See [case]. We therefore hold that Oliva has standing." Oliva, 705 F.3d at 395.

6

## III. CONCLUSION

Defendants have standing, under Title III, to suppress all stationary audio recordings made after they became targets of the investigation, see Order on Mot. to Suppress at 11 (providing relevant dates), as well as any "evidence derived therefrom," 18 U.S.C. § 2515. That is a broader remedy than the Fourth Amendment provides, but statutory text and binding precedent compel the result.

At the evidentiary hearing, the Court will determine what evidence (if any) is tainted by the stationary audio recordings, regardless of whether they captured a particular Defendant's voice. The hearing will proceed as agreed: the agents will take the stand, testify as to what they did with the stationary audio recordings, and face cross-examination.[11] See 11/21/16 Hr'g. Tr. (dkt. 187) at 30:7-32:23.

**IT IS SO ORDERED.**

Dated: December 21, 2016

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[11] In light of the foregoing, the Court will not require that an attorney whose client was unlawfully overheard conduct cross-examination.

7